**TRANSPORT WORKERS UNION**
**OF GREATER NEW YORK • AFL-CIO • LOCAL 100**

**John V. Chiarello** *President*
**Carlos Bernabel** *Secretary Treasurer*
**Shirley Martin** *Recording Secretary*
**Alexander Kemp** *Administrative VP*

September 1, 2026

CERTIFIED MAIL/RRR
and EMAIL: tthompson@twulocal100.org
tt6443bk@gmail.com

Tramell Thompson
91 Lenox Road
Apt. 2C
Brooklyn, New York 11226

RE: Decision of TWU L. 100 Executive Board
Yates, et al. v. Thompson

Dear Mr. Thompson:

In accordance with TWU Constitution Article XX, section 6, the Local 100 Executive Board, adopting the Report and Recommendation of the duly appointed Trial Committee, has found you guilty in the above referenced matter. Enclosed herewith is a copy of the Trial Committee Report. In accordance with the Executive Board's determination, you will be removed from Office and you will be ineligible to hold any elective or appointive position in Local 100 for a period of three years.

Sincerely,

Shirley Martin
Recording Secretary
Transport Workers Union Local 100

cc: J. Chiarello
C. Bernabel

RECEIVED
AUG 26 2026
Office of the Recording Secretary

In the Matter of Yates, et al v. Thompson

Trial Committee Report and Recommendations

The Trial Committee Members are:

Michael Capocci, Trial Committee Chairperson
Vanessa Jones, Trial Committee Member
Grigoriy Dunichev, Trial Committee Member
Christopher Canty, Alternate Trial Committee Member

Mike Rehn represented the Charging Parties, Donald Yates, Scott Steinberg

John Mooney represented the Charged Party, Tramell Thompson

Thompson made several procedural objections at the outset of the Trial Committee.

First: The Charging Party objected to the quality of the printing of the Charge.

The Trial Committee met in Executive Session and ruled on the objection as follows:

The Trial Committee noted that the copy quality was poor, but legible. The objection was overruled.

Second: The Charging Party objected to a typographical error made in the drafting of the Charge. The Charge cites to Article XIX, section (5)(k). The description of the Constitutional violation sets forth the language in XIX section (5)(l). The Charged Party was on notice that the conduct allegedly violated Article XIX section (5)(l): deliberately interfering with any official of the International Union in the discharge of his/her duties. The objection was overruled.

After the procedural objections were ruled on both parties presented opening statements and were afforded the right to present evidence and to call witnesses to testify.

The Charging Party presented the direct case in support of the Charges.

Donald Yates testified that he has been a Local 100 Representative and Officer since 2004, including as the current Vice President from MaBSTOA. He stated that the duties of the Vice President are to assist the President and to handle the affairs of his Department. Yates explained in response to hypotheticals that if he were to involve himself in the affairs of CED or RTO that those Vice Presidents would be justifiably upset with him because he would have gone beyond his

RECEIVED

AUG 26 2026

Office of the Recording Secretary

responsibilities in his own Department. Yates stated that he does not have the authority to act on matters in other Departments. Yates stated that Thompson's conduct goes against the structure of the Union. Vice President's are supposed to stay within the Departments from which they are elected and when issues arise in other Departments (or other unions), they are supposed to reach out to those other Department's Vice Presidents. Yates asserted that he would only get involved in other Departments' affairs when directed by the President or invited by those other Departments' Vice Presidents.

Yates' testimony conforms with the language of the TWU Local 100 By-Laws, Article IV (a), (b) and (d). The Vice Presidents shall assist the President "to such extent as the President shall determine." Further, "[e]ach Vice President shall be elected by the members of his/her Department." Finally, the "Local President may assign a Vice President to additional responsibilities . . ." There was no evidence presented that Thompson's actions were directed or permitted by the President.

In the context of the Charges, Yates explained, the Maintenance Department Union Representatives (both OA and TA) developed a plan to deal with issues involving bus maintenance. There was a media component, a member component and a collective bargaining component. There was a story in the Bronx Times and other media attention to bus safety issues. There was an agreement with Management on disciplinary matters. The members were engaged and informed about the upcoming work. The Charging Party introduced a video Thompson posted that demonstrated that Thompson interfered with the plan that Yates and the members of both OA and TA developed. As the consequence of Thompson's actions, Management revoked their agreement(s) and discipline against Members ensued.

The Charging Party showed a video of Thompson raising safety issues involving subway trains. Yates stated that there were no charges brought against Thompson for this video, because he was addressing matters involving his Department.

Scott Steinberg, Chairperson of MaBSTOA Maintenance, testified. He has been working with the Union since 2006. He stated that it is improper for the Vice President of RTO to interfere with the business of the Maintenance Department. Steinberg stated that the Union Representatives in the Maintenance Department had a plan that focused on brake repairs/defects. They went to Management and demanded that 23 buses undergo immediate repairs. Included in the plan was media outreach, including to Fox 5. The plan was effective. Management and Local 100 Department of Buses representatives agreed to pull unsafe buses from the road. Management also agreed that the repair work would be performed on overtime by Local 100 members.

RECEIVED
AUG 2 6 2026
Office of the Recording Secretary

Additionally, Management agreed to not focus on discipline matters that had been previously alleged.

Then, according to Steinberg, the actions of Thompson in interfering in Maintenance Department business caused Management to retaliate against the Union and to revoke its prior understandings. Management stated that the Union's credibility was shot. Management began imposing severe discipline on Maintenance Department members in Department of Buses.

The Charged Party made an issue of the time of the filing of the Charges. He alleged that the filing was done during working hours – while Steinberg was on TA Release – using an MTA scanner. He also alleged that the email was sent from an employer email address. It is unclear what violation the Charged Party was trying to allege. While it is unwise to use the employer's email for internal union affairs, there is no violation associated with such use. Moreover, the Charged Party was unable to establish the allegation of drafting the Charge during working hours. Finally, even if established, the ministerial task of sending an email on working hours does not vitiate the substance of the Charges.

The Charged Party declined to put on a direct case.

The Trial Committee's task is to evaluate the evidence presented to it and to determine whether that evidence substantiates a Constitutional violation. There is ample evidence that the Charged Party's actions were well outside his purview as the Vice President of RTO. There was ample circumstantial evidence presented by the Charging Party that Thompson's actions caused significant damage to agreements made between the Local 100 Maintenance Department Representatives and Management. Steinberg testified that a Manager told him "straight to his face" that it was Thompson's actions that caused the MTA to renege on its agreements. This hearsay testimony is reliable. Overtime was cut. Members were subject to increased levels of disciplined. The ability of the Union Representatives to work with Management to repair the buses was undermined. The circumstantial evidence established that Management retaliated against Local 100 because of Thompson's interference with Department of Buses affairs.

The Charging Party made a strong point in saying that it is not the content of the video that made them file the Charges. Their motive in proceeding with the Charges was Thompson's conduct that interfered with their plans and instigated disciplinary action against members. Under these circumstances, the Charging Party demonstrated that Thompson veered outside of his Constitutional responsibilities and violated the Local 100 By-Laws, as well as long-established practices within Local 100: Vice Presidents do not interfere in the affairs of other

RECEIVED
AUG 2 6 2026
Office of the Recording Secretary

Departments. This case demonstrates exactly why this is so: Thompson was unaware of how the other Departments were handling these matters. When he put himself in the situation, without seeking permission from the President or consulting with the other Vice Presidents, his actions caused significant harm to other members.

Accordingly, the Trial Committee finds that Thompson violated the TWU Constitution. By interfering with other Department's agreements, he violated Article XIX(5)(a) – Local 100's By-Laws clearly define (and limit) each Vice President's role to affairs within his/her own Department – absent direction from the President or invitation from the other Departments' Vice President(s) Thompson interfered with the ability of other Local 100 Officers and Representatives in the discharge of their duties, in violation of TWU Constitution Article XIX(5)(l). Thompson's actions damaged the interests and welfare of his Local Union by subjecting members to unnecessary disciplinary action, in violation of Article XIX(5)(n).

The Trial Committee recommends that the Executive Board impose a penalty commensurate with the seriousness of the charges: removal from the Office of Vice President and ineligibility to hold any elective or appointed position in the Local Union or International Union for a period of three years.

Respectfully submitted,

Michael Capocci, Chairperson

Vanessa Jones, Member

Grigoriy Dunichev, Member