**TRANSPORT WORKERS UNION**
**OF GREATER NEW YORK • AFL-CIO • LOCAL 100**

**John V. Chiarello** *President* | **Carlos Bernabel** *Secretary Treasurer* | **Shirley Martin** *Recording Secretary* | **Alexander Kemp** *Administrative VP*

September 1, 2026

CERTIFIED MAIL/RRR
and EMAIL: tthompson@twulocal100.org
tt6443bk@gmail.com

Tramell Thompson
91 Lenox Road
Apt. 2C
Brooklyn, New York 11226

RE: Decision of TWU L. 100 Executive Board
Bernabel v. Thompson

Dear Mr. Thompson:

In accordance with TWU Constitution Article XX, section 6, the Local 100 Executive Board, adopting the Report and Recommendation of the duly appointed Trial Committee, has found you guilty in the above referenced matter. Enclosed herewith is a copy of the Trial Committee Report. In accordance with the Executive Board's determination, you will be removed from Office and you will be ineligible to hold any elective or appointive position in Local 100 for a period of three years.

Sincerely,

Shirley Martin
Recording Secretary
Transport Workers Union Local 100

cc: J. Chiarello
C. Bernabel

RECEIVED
AUG 26 2026
Office of the Recording Secretary

In the Matter of Bernabel v. Thompson

Trial Committee Report and Recommendations

The Trial Committee Members are:

Michael Capocci, Trial Committee Chairperson
Vanessa Jones, Trial Committee Member
Grigoriy Dunichev, Trial Committee Member
Christopher Canty, Alternate Trial Committee Member

Parnell Valdivieso represented the Charging Party, Carlos Bernabel.

Charged Party, Tramell Thompson represented himself.

There were no procedural objections.

The Charging Party introduced a letter he wrote to the Charged Party requesting, as per the By-Laws, reports and records relating to an event that Thompson advertised to, *inter alia,* union members, and at which attendees, including union members, were charged $25. The Charging Party asserted that the Charged Party's attorney responded to the letter by asking for additional time. Thereafter, the Charged Party did not supply the requested reports/records, compelling the filing of the Charges.

This case initially requires an analysis of the TWU Local 100 By-Laws, Article XVI (e) (2). The language relevant language is as follows:

> When union officers . . . are involved in the collection of funds from members . . .

The Charging Party contends that Thompson, a Union Vice President, was involved in the solicitation of money from members in the form of an event alternately described by Thompson as an "Official Surface & Subway Bowling Takeover" and an "MTA vs. Everybody Bowling Party" on April 24, 2026. The Charged Party contends that the By-Laws provision does not apply to the circumstances in this case, which he described as a "private social event", and that the obligations in the By-Laws do not flow from the application of the above cited language.

Several flyers and two videos were presented as evidence by the Charging Party. Thompson maintained that nothing presented by the Charging Party

RECEIVED
AUG 26 2026
Office of the Recording Secretary

included the Union insignia and there was no mention of TWU Local 100. The Charging Party presented evidence that Thompson referred to the Bowling Party as an "Official Surface & Subway" event. Thompson conceded that members of Local 100 are included in the description "Surface & Subway". The videos and the flyers clearly connect the event and the solicitation of Local 100 members to it. Thompson conceded that TWU Local 100 members attended the event and that they paid money to attend. The Trial Committee concludes that the use of the word "Official" preceding the words "Surface & Subway" in the literature / postings advertising the event would give a member reason to conclude that the Bowling Event was a Local 100 connected occasion and that members would reasonably expect that their attendance was to bolster camaraderie within the Union. The words "Surface & Subway" are commonly used to describe Local 100's two parts of the transit system. The fact that other people outside the transit system were also encouraged to attend does not alter the above conclusion. For instance, retirement parties frequently involve invitations to non-Local 100 members. The Charged Party concedes that retirement parties are governed by the By-Laws. Accordingly, the provisions of the By-Laws apply to the circumstances of the event.

Thompson made a point of the language in Article XVI (e)(1) as precluding the application of Section (e)(2) or (e)(3), including the obligation to maintain records and to provide them upon request.

The sentence Thompson cited states as follows:

**This shall apply to collections for retirement dinners, charities, benevolent organizations, or to provide assistance to a member or members.**

Thompson maintains that only the types of collections listed above trigger the obligation to maintain records of the collections of funds and to provide those records to the Financial Secretary-Treasurer upon request. This is not so. The listing of certain types of collections in Section (e)(1) is not meant to exclude other types of collections. There are a myriad of other types of collections or events for which records must be maintained and provided to the President or Financial Secretary-Treasurer upon request. For instance, there is no mention of depot holiday parties in Section (e)(1). But it is clear that such events are governed by the By-Laws and that Union Officers who organize and collect funds for such events must comply with the recordkeeping requirements of Article XVI. What makes the Bowling Event that Thompson advertised different from depot holiday parties, retirement dinners and the like is the potential for a

RECEIVED
AUG 26 2026
Office of the Recording Secretary

profit motive. If the Bowling Event was intended to make a profit for its organizers, Local 100 members who were solicited to attend should have been informed of that intention. The By-Laws state that "the purpose of such collections shall be clearly stated to the members being solicited and the use of such funds shall be limited to such purposes." It must be remembered that the purpose of these By-Laws provisions is to prevent Union Officers from using their position(s) to unlawfully solicit money from members.

Based on the evidence presented, the Trial Committee finds as follows:

1. Tramell Thompson is a union officer;
2. He was "involved" in the collection of funds (for the bowling event); and
3. The collection of funds included members of Local 100.

It is clear that Thompson was "involved" in the collection of funds from members as he advertised the event with a flyer with his name on it and he advertised the event in videos and various flyers/posts.

In defense of his actions, the Charged Party contended that he did not participate in the physical collection of any funds and that there was no evidence that he made a profit from the event. These contentions miss the mark. The By-Laws provision at issue does not require that the officer physically handle any funds. The By-Laws provision state that the officer need only be "involved" in the collection of funds. Clearly, Thompson was "involved" in the collection of funds from members based on his advocacy for the event and the posting of the videos. The question of whether there was any profit-taking could only be answered by supplying the reports and records, which Thompson declined to supply.

Thompson conceded that he doesn't have any documents or records of the collections or the expenditures of the funds. He admits that he did not produce any such records or reports; his primary defense centered around his contention that as a private social event he was not obligated to maintain such records.

Thompson introduced evidence of Bernabel's participation in fundraisers in November and December of 2023 to show that Thompson was not required to comply with By-Laws Article XVI. This evidence is not relevant. The By-Laws specifically exclude collections taken by or for candidates for Local office to defray the cost of their campaigns. (Article XIX section (c).)

RECEIVED

AUG 26 2026

Office of the Recording Secretary

Thompson maintained that the LMRDA, section 101(a) overrides the By-Laws provisions related to maintaining records of collections. This too misses the mark. The By-Laws provision he is alleged to have violated does not infringe on the rights of members to assemble and speak out on union issues. It is a recordkeeping and reporting requirement.

Finally, Thompson contends that in order for Article XVI of the By-Laws to apply the event must have been a "union" event. This contention does not square with the language of the By-Laws. Section (e)(1) refers to "**[a]ll collections of funds, from members, by union officers** . . ." As noted above, these collections need not be union events – although those types of collections are clearly encompassed by the By-Laws. It is ironic that the Charged Party relies heavily on this defense, when the advertising / solicitation flyer(s) clearly state that the event was an "OFFICIAL SURFACE & SUBWAY BOWLING TAKEOVER"

Based on the totality of the circumstances and the evidence (and arguments) presented to the Trial Committee, we find that Tramell Thompson violated the TWU Constitution by failing to adhere to Local 100's By-Laws Article XVI.

The Trial Committee recommends that Thompson be removed from office and be ineligible to hold any office or appointive office in the Local Union or the International Union for a period of three (3) years.

Respectfully submitted,

Michael Capocci, Chairperson

Vanessa Jones, Member

Grigoriy Dunichev