130 Livingston Street
Brooklyn, New York 11201
New York City Transit
(718) 694-3892

Demetrius Crichlow
President

November 15, 2026

Hon. Diane Gujarati
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

***Re:*** ***Thompson v. New York City Transit Authority, etc., et al.***
**Case No. 26-cv-3393 (DG)(VMS)**

Dear Judge Gujarati:

This office represents defendants New York City Transit Authority ("TA") and its managers Paul McPhee and Chris Basile (collectively the "TA Defendants") in the above-entitled action. The purpose of this letter to request a pre-motion conference in anticipation of the TA Defendants' Rule 12(b)(6) and Rule 8(a)(2) motion to dismiss the Second Amended Complaint ("SAC").

Plaintiff Tramell Thompson was employed by the TA as a subway train conductor from 2013 until his termination by arbitration award dated August 19, 2024 for serious misconduct. Plaintiff previously commenced a CPLR Article 75 proceeding challenging the arbitration award which named both the TA and the Transport Workers Union of Greater New York, Local 100 (the "union") as respondents. The petition was denied. *See Thompson v. N.Y.C. Transit Auth*ority, No. 524573/2024, 2025 N.Y. Misc. LEXIS 32477 (Supreme Court, Kings County, July 1, 2025). An appeal has been perfected to the Second Judicial Department but has not calendared for argument.

The SAC in this action, a third attempt to allege facts sufficient to support claims against the TA and the union, is 108 pages long, contains 318 paragraphs and asserts 13 claims, eight claims against the TA. The theory of the case is that the TA and the union separately violated Thompson's rights and also conspired to terminate him in August 2024. Rather than allege facts, however, the SAC contains long paragraphs with opinions, conclusions and vague assertions. The SAC does not remotely comply with Rule 8(a)(2)'s requirement of a "short and plain statement of the [plaintiff's] claims showing that the pleader is entitled to relief." *See, e.g., Sinclair v. Bank of Am.*, *NA*, No. 23-cv-00295, 2024 U.S. Dist. LEXIS 42589, at *3 (E.D.N.Y. March 11, 2024) (Gujarati, J.) ("Plaintiff's Complaint does not satisfy the requirements of Rule 8 and the Complaint therefore must be dismissed"[1]).

Each claim against the TA is either legally or factually deficient, or both. The First and Eleventh Causes of Action are essentially First Amendment retaliation claims. The SAC refers to plaintiff's podcasts and complaints against the TA and union. But as noted below, other than vague hearsay suggestions about meetings in 2020, termination is the only adverse action alleged to have been taken by the TA and no facts have been alleged that plaintiff was terminated for any reason

[1] The dismissal of the complaint in *Sinclair* was without prejudice because the complaint was the plaintiff's first, and was filed pro se. In this instant action, the SAC is plaintiff's third complaint, and all three complaints were filed by his attorney. It is respectfully submitted that dismissal with prejudice would be appropriate in this case.

other than his established misconduct. Additionally, the First Amendment retaliation claims fail to state any factual basis for liability against either Mr. Basile or Mr. McPhee.

The Second Cause of Action is a federal equal protection claim based on a purported difference in discipline imposed by the arbitrator in 2024 on Plaintiff, who is Black, as compared to the discipline imposed in 2019 by another arbitrator on a single "non-Black" alleged comparator. Plaintiff's claim, which does not challenge the underlying misconduct but only the penalty, fails to state a claim because it contains no alleged facts that plausibly suggest the difference occurred "under materially indistinguishable conditions." *Scarpellino v. Freeman*, No. 3:22-cv-1130, 2026 U.S. Dist. LEXIS 25657, at *42 (D. Conn. Feb. 6, 2026). While the SAC mentions a "class of one" theory as an alternative basis for this claim, that is not cognizable in the public employment context. *See Leon v. Rockland Psychiatric Ctr*., 232 F. Supp.3d 420, 431 (S.D.N.Y. 2017). It is noted that the penalties imposed on plaintiff and on the comparator were not imposed by the TA but by different neutral arbitrators.

The Third Cause of Action is a federal due process claim challenging the process by which plaintiff was terminated, *i.e.,* the disciplinary charges-to-grievance-arbitration process provided in the relevant collective bargaining agreement between the TA and the union. That process, however, which ended in an arbitration award after a hearing, satisfies "due process." *See, e.g., Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008). Moreover, plaintiff had further "process" available to him in the CPLR Article 75 proceeding to vacate the award. *See, e.g., Ventillo v. Falco*, No. 19-CV-03664, 2020 U.S. Dist. LEXIS 239540, at *35-36 (S.D.N.Y. Dec. 18, 2020) (it is "well established that the existence of the Article 75 procedure constitutes due process as a matter of law"). This claim fails.

The Fifth Cause of Action purports to be a Fourteenth Amendment due process conspiracy claim between the TA, the union and the arbitrator to "inflict an unconstitutional injury on Plaintiff: the termination of his employment…." *See* SAC at par. 253. The purported coordinated acts are contained in paragraphs 199 to 205, yet the TA is mentioned only in paragraph 202, which involved the arbitration hearing. Overall, the "facts" allege nothing more than arbitration scheduling issues and aspects of the arbitration procedure. This claim fails for the same reason the third claim fails -- it fails to allege a colorable due process claim. It is noted that "New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp*., 449 F.3d 388, 401 (2d Cir. 2006).

The Eighth Cause of Action is based on the New York State Constitution and asserts free speech and equal protection claims. This claim rests on the same allegations as the federal claims and fails for the same reasons the federal claims fail.

The Ninth Cause of Action asserts a violation by the TA Defendants of New York's public employee "whistleblower" retaliation law (N.Y. Civ. Serv. Law § 75-b). In the state court Article 75 proceeding, plaintiff claimed that the arbitrator failed to consider the 75-b defense and litigated the issue. This claim fails as a matter of law. The only available remedy to raise a 75-b claim was arbitration: "[w]here, as here, an employee is subject to dismissal under a final and binding arbitration provision contained in a collective bargaining agreement, *the employee must assert the protections afforded by section 75-b (2) as a defense before the arbitrator*" and, therefore, the

Section 75-b claim "is barred by the arbitrator's award…" (emphasis added). *See Obot v. New York State Department of Correctional Services*, 256 A.D.2d 1089, 1090 (4th Dep't, 1998).

The 75-b claim is also deficient because plaintiff has failed to allege a statutory whistleblower claim, which must be based on a complaint to a "governmental body" about "improper governmental action" which violates "any federal, state or local law, rule or regulation." *See* Section 75-b. Finally, since a § 75-b claim can only be asserted against a public employer, and not its employees, the § 75-b claims against McPhee and Basile, TA employees, may not be sustained. *Payson v. Bd. of Educ. of Mt. Pleasant Cottage Sch*., No. 14 civ. 9696, 2017 U.S. Dist. LEXIS 154296, at *85-86 (S.D.N.Y. Sept. 20, 2017).)

The Twelfth Cause of Action is a claim against the TA, under N.Y. Labor Law § 201-d, of retaliation for lawful off-duty political activity. "Political activity," however, is defined in that subsection to mean "(i) running for public office, (ii) campaigning for a candidate for public office, or (iii) participating in fund-raising activities for the benefit of a candidate, political party, or political advocacy group." The SAC has no allegations of such "political activity" (and *union office* is not "public office"). This claim fails.

Plaintiff has named two TA employees named as defendants, Paul McPhee and Chris Basile. The two appear in about 12 of the 318 paragraphs. Paragraphs 9 and 10 allege, without facts, that McPhee conducted "surveillance" and Basile instructed supervisors to "surveil" plaintiff. Paragraphs 33 and 34 allege no facts, paragraphs 70, 72, 75, 77 and 210 vaguely refer to events in 2020 -- well outside any relevant statute of limitations -- and a purported agreement to terminate plaintiff. The last mention of McPhee and Basile, in paragraph 235, asserts in conclusory fashion that they "personally caused the deprivation by directing the surveillance and stockpiling of charges that produced the manufactured disciplinary record on which the arbitrator relied." No facts have been alleged that support any claims against McPhee and Basile.

These arguments will be the basis of the TA defendants' motion to dismiss. Thank you for your consideration in this matter.

Respectfully,

Robert K. Drinan
Executive Agency Counsel
Attorney for TA Defendants
Robert.Drinan@nyct.com
Tel. (718) 694-3892
New York City Transit Authority
130 Livingston Street (12th Floor)
Brooklyn, New York 11201

cc: All counsel of record (*via* ECF)