**JIMMY WAGNER**
ATTORNEY-AT-LAW

November 23, 2026

**Via ECF**
Hon. Diane Gujarati
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: *Thompson v. New York City Transit Authority, et al.*, No. 1:26-cv-03393-DG-VMS**
**Plaintiff's Response to the Transit Authority Defendants' Pre-Motion Conference Letter (ECF No. 40)**

Dear Judge Gujarati:

Plaintiff Tramell Thompson opposes the request by NYCTA, Paul McPhee, and Chris Basile for leave to move to dismiss the Second Amended Verified Complaint (ECF No. 39, "SAC").

NYCTA's central point is that the SAC alleges no facts showing that Thompson "was terminated for any reason other than his established misconduct." ECF No. 40 at 1–2. But the misconduct charged was his speech. The SAC alleges that the investigative report behind the termination collected his social-media posts dating back to May 10, 2021. SAC ¶ 109. NYCTA's counsel described the charges the same way on August 20: they "involved a claim on his podcast" about a sexual assault and "a podcast" about an acting chief officer. Ex. A ("Tr.") 13:20–14:1. Counsel then said: "So this is the reason that he was terminated." Tr. 45:2. NYCTA disputes that the reporting was true. Tr. 44:22–45:1. It does not dispute that the reporting is why Thompson lost his job. The question on any motion is therefore whether the speech was protected, and NYCTA's letter does not argue that it was not. Plaintiff cites the transcript for counsel's description of the charges, not to resolve disputed facts.

**1. The First and Eleventh Causes allege that NYCTA fired Thompson for citizen speech on public matters.** A retaliation claim requires protected speech, an adverse action, and a causal connection. *Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018). Thompson alleges that he reported on corruption, crime, and transit safety off duty, on his own platform, and outside his duties as a conductor. SAC ¶¶ 43–55, 68. He alleges that NYCTA monitored that reporting, let charges about it accumulate for as long as three years, and then presented them together to obtain his termination. SAC ¶¶ 72–79, 109, 114, 124. Causation here does not rest on timing. The speech was the charge. NYCTA's position that the reporting was false raises a dispute of fact, and the SAC's allegations control at this stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Whether the arbitrator's findings carry preclusive weight is a separate question that requires the award and the Article 75 papers, which NYCTA has not supplied.

O: 929-477-8889
C: 718-288-2048
jimmy013@gmail.com
2055 Flatbush Ave
Brooklyn, NY 11234

**2. The SAC pleads what McPhee and Basile did.** NYCTA calls these allegations "vague hearsay suggestions about meetings in 2020." ECF No. 40 at 1. They are specific. In the summer of 2020, an NYCTA manager, Aikido Sticatto, told Thompson that he had been called to Basile's office and learned there that McPhee had ordered Thompson surveilled; that McPhee wanted to "hang" Thompson for anything subordinate managers could find; and that Basile had told Sticatto to cease contact with Thompson. SAC ¶ 72. Weeks later, the MTA disclosed at a workers' compensation hearing that it had hired private investigators to follow and photograph him. SAC ¶ 74. The SAC connects that directive to the disciplinary record used against Thompson four years later. SAC ¶¶ 9, 78, 188–189, 220, 235. The 2020 events show motive and personal involvement in an injury, the August 19, 2024 termination, that occurred within three years of the June 5, 2026 filing. SAC ¶¶ 124, 170; *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 79–80 (2d Cir. 2015).

**3. The Second Cause pleads race-based selective enforcement.** A comparator must bear a reasonably close resemblance to the plaintiff; identity is not required. *Hu v. City of New York*, 927 F.3d 81, 96–97 (2d Cir. 2019). Thompson, who is Black, alleges that John Ferretti, a non-Black employee, received a two-day suspension for a Facebook post threatening a manager, under the same disciplinary system and rules, while Thompson was terminated for posts that threatened no one. SAC ¶¶ 127, 225. He also alleges that supervisors referred to him by the code words "red meat." SAC ¶ 70. NYCTA answers that arbitrators imposed the penalties. ECF No. 40 at 2. But NYCTA brought the charges, and the arbitrator "upheld the NYCTA's termination." SAC ¶ 124. The class-of-one theory is pleaded only in the alternative, SAC ¶ 226, and Plaintiff does not contend that *Hu*'s comparator standard governs it. *See* 927 F.3d at 93.

**4. The Third Cause alleges that a mandatory procedure was withheld, not that no forum existed.** NYCTA relies on *Adams v. Suozzi*, 517 F.3d 124 (2d Cir. 2008), and on the availability of Article 75 review. ECF No. 40 at 2. Thompson alleges more than an erroneous arbitration decision: he claims that NYCTA and the Union deliberately prevented him from obtaining a determination of a mandatory statutory defense. He alleges that New York law required the arbitrator to decide his whistleblower defense separately; that the participants in the proceeding deliberately prevented that determination; and that the award rested on a disciplinary history NYCTA manufactured and on committee findings he could not confront. SAC ¶¶ 126, 230–233. The SAC pleads that deprivation under *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), as one carried out through established state procedure, for which a later state remedy is not a complete answer. SAC ¶¶ 230, 233. *Adams* found notice and grievance procedures sufficient where the deprivation could be "fully remedied." 517 F.3d at 127–28. The question is whether arbitration and Article 75 review afforded Thompson a meaningful opportunity to present and obtain a determination of that defense, not merely whether those procedures were available.

**5. The Fifth Cause is a § 1983 conspiracy claim, and it pleads NYCTA's acts.** It requires an agreement to inflict constitutional injury and an overt act causing damage. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). The New York tort rule NYCTA cites does not govern a federal claim. NYCTA also says it appears only in paragraph 202. ECF No. 40 at 2. Paragraph 201 alleges that NYCTA suspended and cross-charged Thompson after he was assaulted and, with the Union, conducted the assailant's arbitration off the calendar. Paragraphs 210, 244, and 254 allege the agreement and NYCTA's acts in the 2024 arbitration. The supporting facts include this one: the same arbitrator applied the First Amendment to reduce a proposed termination to a fifteen-day suspension on speech-based charges, and ten days later upheld Thompson's termination without that analysis. SAC ¶¶ 123–125. The alleged private communications are

pleaded on information and belief. SAC ¶ 255. The claim alleges First Amendment injury as well, so it does not turn on the Third Cause alone. SAC ¶¶ 253, 256.

**6. The state-law objections do not warrant dismissal.** *Ninth Cause. Obot v. New York State Department of Correctional Services*, 256 A.D.2d 1089, 1090 (4th Dep't 1998), is not on point: it required a covered employee to assert § 75-b in arbitration and held the later claim barred. But *Matter of Kowaleski v. N.Y.S. Dep't of Corr. Servs.*, 16 N.Y.3d 85, 91–92 (2010), required the arbitrator to determine a raised defense and vacated an award for failure to do so. The SAC alleges that the defense was identified, its facts were presented, and no determination was made. SAC ¶¶ 124, 294. What was presented and decided, in the arbitration and in the Article 75 proceeding, requires those records. SAC ¶ 129. NYCTA's "governmental body" objection overlooks the alleged reports to the MTA Inspector General, the NYPD, the State Division of Human Rights, and the State's public-employee safety bureau. SAC ¶¶ 54–56, 60. As to McPhee and Basile, § 75-b(2)(a) is addressed to the public employer; the SAC pleads their directions as the means by which NYCTA acted. SAC ¶¶ 188–189, 292.

*Eighth Cause.* NYCTA's only objection is that this claim falls with the federal claims. ECF No. 40 at 2. It stands with them. *See Brown v. State of New York*, 89 N.Y.2d 172, 188, 192 (1996) (recognizing a narrow constitutional damages remedy, including for equal protection); *Alwan v. City of New York*, 311 F. Supp. 3d 570, 586–88 (E.D.N.Y. 2018) (comparing alternative remedies claim by claim); SAC ¶ 286.

*Twelfth Cause.* This claim is not confined to union candidacy. The SAC alleges interviews with candidates for public office and alleges that this activity is campaigning under N.Y. Labor Law § 201-d(1)(a)(ii). SAC ¶¶ 51, 144, 312–313. May 2026 interview concerns the Union's later conduct, not the 2024 termination.

**7. Rule 8 does not support dismissal, and dismissal with prejudice is unwarranted.** The SAC is long because it covers events from 2020 through September 2026 and fourteen named defendants. Each of its thirteen causes of action names the defendants it runs against, and paragraphs 187–197 state each defendant's role. NYCTA's only Rule 8 authority dismissed a first, pro se complaint without prejudice. ECF No. 40 at 1 n.1. No ruling has identified a defect in any pleading in this case; the August 20 ruling addressed interim relief. Tr. 54:18–55:14. As Individual Rule III.A requires, Plaintiff states that he will seek leave to amend if the Court identifies a curable defect. The amendment would organize the allegations by defendant and specify McPhee's and Basile's conduct and the pretermination political activity underlying the Twelfth Cause. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015).

Plaintiff asks the Court to deny leave to move or, alternatively, to set full briefing and decline dismissal with prejudice. Plaintiff withdraws no claim or remedy.

Respectfully submitted,

Jimmy Wagner

Enclosure: Exhibit A, August 20, 2026 conference transcript
cc: Robert K. Drinan, Arthur Z. Schwartz, and Bhavleen Sabharwal (via ECF)