**JIMMY WAGNER**
ATTORNEY-AT-LAW

November 23, 2026

**Via ECF**
Hon. Diane Gujarati
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: *Thompson v. New York City Transit Authority, et al.*, No. 1:26-cv-03393-DG-VMS**
**Plaintiff's Response to the Local 100 Defendants' Pre-Motion Conference Letter (ECF No. 41)**

Dear Judge Gujarati:

Plaintiff Tramell Thompson opposes the Local 100 Defendants' request for leave to move to dismiss the Second Amended Verified Complaint (ECF No. 39, "SAC").

The Union says the SAC offers "nothing more than a naked allegation that the union charges were brought at the behest of the NYC Transit Authority." ECF No. 41 at 2. The SAC alleges that the Union's own Trial Committee found otherwise. On April 1, 2026, Thompson posted a video reporting that buses with brake and steering defects were being placed into service. SAC ¶ 146. According to the SAC, the Committee found that "it is not the content of the video that made them file the Charges." The charging officers acted because the video caused NYCTA management to "retaliate against the Union" by revoking agreements, cutting overtime, and disciplining members. SAC ¶¶ 159, 176. Following those findings, the Executive Board removed Thompson from his elected vice presidency and barred him from holding elective or appointive office for three years. SAC ¶ 173. These are the SAC's allegations about the reports, not findings established in this action. Taken as true, those allegations answer the Union's assertion that the claimed coordination is wholly conclusory.

**1. The Seventh Cause states an LMRDA claim that does not depend on state action.** The Union's state-action argument does not dispose of the Seventh or Tenth Causes, which arise under LMRDA. Its only LMRDA argument is that an officer's duties limit his speech. ECF No. 41 at 2. That argument does not answer the pleading, for four reasons.

First, retaliatory removal of an elected officer can violate Title I because "the union members are denied the representative of their choice." *Sheet Metal Workers' International Ass'n v. Lynn*, 488 U.S. 347, 354–55 & n.6 (1989).

Second, the Union's own authority stops short of this case. *Newman v. Local 1101*, 570 F.2d 439 (2d Cir. 1978), as the Union quotes it, permits removal "as an official or employee (but not as a union member)." ECF No. 41 at 2. *Newman* examined the purpose or effect of the removal and emphasized that the steward kept his membership rights and his eligibility for office. 570 F.2d at 446–49. Thompson lost his eligibility for any office for three years. SAC ¶ 173. Unlike the

removal in Newman, this sanction also deprived Union members of the opportunity to elect Thompson to office during that period.

Third, the pleaded facts contradict the officer-duty defense. On February 25, 2026, President Chiarello told the MTA Board that 21 of the 23 buses the Union had brought back had brake defects. SAC ¶ 147. On March 11, he and Defendant Steinberg repeated the point on FOX 5. SAC ¶ 148. Neither was charged. Thompson's video followed three weeks later; he alone was ordered to take it down and was prosecuted, on charges Steinberg signed. SAC ¶¶ 149, 151. The second charge concerned a privately organized bowling event that bore no Union insignia, and a demand that Thompson identify who attended. SAC ¶¶ 168, 177. The Union's letter describes that charge as "using his office to make money and not report it." ECF No. 41 at 2. That description is not in the SAC.

Fourth, the Union does not address §§ 411(a)(1) or (a)(5). Trial-committee reprimands adopted by Local 100's Executive Board are discipline under § 411(a)(5). *Schermerhorn v. Local 100, Transport Workers Union of America*, 91 F.3d 316, 326 (2d Cir. 1996). Thompson alleges the same process, with the charging parties sitting on the Board that adopted the reports and a Board member stating that he voted to bring the charges because he had no choice. SAC ¶¶ 162, 173, 275. He also alleges that the penalty was imposed before any appeal. SAC ¶ 173. Twelve days earlier, Union counsel had told the Court: "There will be no implementation until that occurs." Aug. 20, 2026 Tr. 25:15–16; SAC ¶ 171.

**2. The § 1983 claims allege coordinated retaliation, not state action by union status.** Plaintiff accepts that conclusory allegations of union-employer cooperation are insufficient. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323–25 (2d Cir. 2002). The SAC alleges more:

- A manager told Steinberg "straight to his face" that Thompson's reporting was the cause of management's actions against the Union. Steinberg so testified before the Trial Committee. SAC ¶¶ 156, 159.
- On information and belief, managers conveyed that NYCTA would revoke agreements, reduce overtime, and discipline members unless the Union acted against Thompson. SAC ¶ 156.
- The charges were filed fourteen days after the video. Steinberg transmitted them during paid release time, using an MTA scanner and an employer email address. SAC ¶¶ 156–157.
- A signer of the charges stated that the name of NYCTA's President was added after he signed. SAC ¶ 158.
- The Trial Committee credited the testimony about management's reaction, and the Executive Board adopted its findings. SAC ¶¶ 176, 246.

Taken together, those allegations support a plausible inference that NYCTA and Union officials acted in concert to retaliate against Thompson, rather than merely pursuing parallel institutional interests. <u>See</u> *Betts v. Shearman*, 751 F.3d 78, 84–86 (2d Cir. 2014). *Betts* affirmed dismissal where the alleged coordination was conclusory and implausible. The officers' alleged NYCTA payroll status and exposure to NYCTA discipline explain how management could exert the pleaded pressure; Plaintiff does not offer those facts as independently establishing state action. SAC ¶ 181. *Cf. Hughes v. Patrolmen's Benevolent Ass'n*, 850 F.2d 876, 880–81 (2d Cir. 1988) (joint-activity pleading sufficient, although the jury ultimately found no state action).

Nor does the SAC describe only charges and trials, as the Union says. ECF No. 41 at 1. It pleads Chiarello's speech-restricting directives, the Union's related letters, and NYCTA's alleged protection of the officers who assaulted Thompson. SAC ¶¶ 83–93, 136–140, 242.

**3. Preclusion cannot be decided on the Union's summaries.** Plaintiff does not dispute that a pending appeal leaves a judgment's preclusive effect intact. *Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir. 1988). But what a judgment precludes depends on what it decided. *Bottini v. Sadore Management Corp.*, 764 F.2d 116, 121 (2d Cir. 1985), preserved a Title VII claim outside the arbitration and limited Article 75 review. *Matusick v. Erie County Water Authority*, 757 F.3d 31, 45–49 (2d Cir. 2014), gave effect to disciplinary findings of misconduct while distinguishing unadjudicated discrimination issues. The SAC describes the Article 75 petition as raising bad-faith representation and the omitted whistleblower determination. SAC ¶ 129. What the state court decided requires the petition, the award, and the orders.

Two further points limit the defense. The July 31, 2025 directive and the September 1, 2026 removal postdate the June 30, 2025 judgment. SAC ¶¶ 129, 136, 173. Claim preclusion generally does not reach later conduct. *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S. 405 (2020). And the releases, stipulations, and state tort pleadings the Union describes are not in the SAC or before the Court. ECF No. 41 at 2–3. An affirmative defense supports dismissal at this stage only when the complaint and judicially noticeable material establish it. *See Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024) (quoting *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015)). The Union cites no authority that a failure to seek Article 75 review of earlier suspensions bars these constitutional claims, and no federal authority for its proposed bar based on the pending assault suits. ECF No. 41 at 3. The letter also offers no claim-specific argument against the Eighth, Tenth, or Twelfth Causes.

**4. Leave to amend.** As Individual Rule III.A requires, Plaintiff states that he will seek leave to amend if the Court identifies a curable defect. The amendment would organize the allegations by defendant, add available specifics of the communications, and attach the reports and notices described in SAC ¶ 173 to the extent Plaintiff holds them. *See Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015).

Plaintiff asks the Court to deny leave to move or, alternatively, to set full briefing and decline dismissal with prejudice. Plaintiff withdraws no claim or remedy.

Respectfully submitted,

Jimmy Wagner

cc: Robert K. Drinan, Arthur Z. Schwartz, and Bhavleen Sabharwal (via ECF)